RECEIVED
IN CLERK'S OFFICE
MAY - 2 2005
U.S. DISTRICT COURT
MID. DIST. TENN.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION No. **3 - 0 5    0 3 4 5** |
| | ) |
| E. I. DU PONT DE NEMOURS | ) |
| AND COMPANY | ) **JUDGE TRAUGER** |
| | ) |
| Defendant. | ) |
| _____ | ) |

## CONSENT DECREE

### I.    BACKGROUND

A.    Plaintiff, the United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), has filed a Complaint concurrently with the lodging of this Consent Decree, against E. I. du Pont de Nemours and Company ("DuPont") with respect to a titanium dioxide facility consisting of approximately 1,500 acres located at One DuPont Road in New Johnsonville, Tennessee ("the Facility").

B.    The Complaint, pursuant to Section 113, of the CAA, 42 U.S.C. § 7413(b), seeks civil penalties and injunctive relief from DuPont for alleged violations, at the Facility, of the refrigerant leak repair, testing, record-keeping, and reporting regulations at 40 C.F.R. Part 82, Subpart F, Sections 82.152 - 82.166, ("Recycling and Emission Reduction"), promulgated pursuant to Subchapter VI of the Clean Air Act ("CAA")  ("Stratospheric Ozone Protection"), 42 U.S.C. §§ 7671-7671q.

C. The United States and DuPont have agreed on terms to settle this action. By entering into this Consent Decree, DuPont makes no admission of liability to the United States arising out of the transactions or occurrences alleged in the Complaint and does not admit to any of the facts as alleged by the United States in the Complaint. Nothing in the allegations, the proposed penalties, this Consent Decree, or the signing, execution, or implementation of this Consent Decree constitutes an admission or evidence of, or shall be treated as an admission or evidence of, any allegation or of any violation of the statute and regulations referred to herein, in any litigation or forum whatsoever.

D. The United States and DuPont agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that the Decree is fair and reasonable, is in the public interest, and will benefit the public health, safety, and the environment.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. JURISDICTION AND VENUE

A. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and also has personal jurisdiction over DuPont.

B. DuPont consents to and shall not challenge entry of this Decree or this Court's jurisdiction over this action or over DuPont and does not contest venue in this judicial district.

2

C.     Notice of the commencement of this action has been given to the Tennessee Department of Environmental Control. 42 U.S.C. § 7413(b).

### III.    PARTIES BOUND

A.     The obligations of this Consent Decree apply to and are binding on both the United States, and on DuPont and its officers, directors, agents, trustees, servants, employees, successors, and assigns.  Any change in ownership or corporate or other legal status of DuPont, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of DuPont under this Consent Decree.

B.     The undersigned representatives certify that they are fully authorized to enter into the Consent Decree and to execute and to bind the Parties to the Consent Decree.

C.     At least thirty (30) Days prior to transferring ownership or operation of the Facility to any other person, DuPont must provide a copy of this Consent Decree to each prospective successor owner or operator.  No transfer will relieve DuPont of its obligations to ensure that the terms of this Consent Decree are implemented, including but not limited to, ensuring that each Industrial Process Refrigeration Appliance ("IPR")  listed in Appendices A and B is Retrofitted, or Replaced in accordance with Section VI ("Compliance Requirements") and Section VII ("Supplemental Environmental Project") of this Consent Decree.

D.     DuPont shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree.

E.     In any action to enforce this Consent Decree, DuPont may not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions

3

necessary to comply with the provisions of this Consent Decree.

## IV.  DEFINITIONS

Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in the Clean Air Act, or in the regulations promulgated pursuant to the Act, shall have the meaning assigned to them in the Act and regulations. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

A.   "Appliance" means any device which contains and uses a Class I or Class II substance as a refrigerant and which is used for household or commercial purposes, including any air conditioner, refrigerator, chiller or freezer. 40 C.F.R. § 82.152;

B.   "Comfort Cooling Appliance" or "CCA" means any appliance that contains more than 50 pounds of Refrigerant but is used for the comfort of employees working in the plant and is not linked to the manufacturing process, but is covered by 40 C.F.R. § 82.156(i)(5);

C.   "Complaint" means the Complaint filed by the United States in this action;

D.   "Consent Decree" means this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control;

E.   "Date of Entry of the Consent Decree" shall mean the date the Consent Decree is approved or signed by the United States District Court Judge;

F.   "Day(s)" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business the next business day;

4

G.   "DuPont" shall mean E. I. du Pont de Nemours and Company; Wilmington, Delaware;

H.   "Effective Date" means the date of entry of this Consent Decree by the Court;

I.   "EPA" means the United States Environmental Protection Agency and any successor departments or agencies of the United States;

J.   "Facility" shall mean the DuPont titanium dioxide manufacturing facility located at One DuPont Road, in New Johnsonville, Tennessee, 37134;

K.   "Industrial Process Refrigeration Appliance" or "IPR" means any Appliance that is directly linked to the manufacturing process and that contains more than fifty (50) pounds of an ODS Refrigerant, as defined in 40 C.F.R. § 82.152, and is covered by 40 C.F.R. 82.156(i)(2);

L.   "Non-Ozone Depleting Substance" or "Non-ODS" means any substance that is approved by EPA for the end use of the Appliance, and is not an ODS;

M.   "Non-ODS System" means any cooling system that either contains only  Non-ODS, or contains no ODS;

N.   "ODS" means an ozone depleting substance which is defined as a Class I or Class II substance, or a blend of Class I or Class II substances. Section 602 of the CAA, 42 U.S.C. § 7671(a), 40 C.F.R. § 82.3, App. A and B;

O.   "ODS System" means any cooling system which uses ODS;

P.   "Paragraph" means a portion of this Consent Decree identified by an arabic numeral or an upper or lower case letter;

Q.   "Parties" means the United States and DuPont;

5

R.    "Retrofit", "Retrofits" or "Retrofitted" means a designed change (i.e., conversion) of an IPR at the Facility from an ODS System to a Non-ODS System;

S.    "Replace", "Replaces" or "Replacement" means to remove from the Facility an existing IPR containing an ODS, and to install an IPR which contains a Non-ODS System;

T.    "Refrigerant" means any Class I or II ozone-depleting substances as per the CAA 42 U.S.C. § 7671(g);

U.    "Section" means a portion of this Consent Decree identified by a roman numeral;

V.    "United States" means the United States of America, acting on behalf of EPA.

## V.    DEFENDANT

A.    DuPont is, and at all times relevant to this matter was, the owner and operator of the Facility.

B.    DuPont is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and within the meaning of Section 113(d) of the CAA, 42 U.S.C. § 7413(d).

## VI.    COMPLIANCE REQUIREMENTS

A.    Consistent with the terms of this Consent Decree, DuPont must Retrofit or Replace each of the IPRs as specified in the schedule at Appendix A of this Consent Decree.

B.    DuPont must complete all Retrofits and Replacements required under Appendix A no later than thirty-six(36) months from Date of Entry of the Consent Decree. DuPont commits to completing at least one of the Retrofits or Replacements no later than twelve (12) months from Date of Entry date of the Consent Decree. DuPont must not convert any non-ODS System(s) to an ODS System.

6

C.    DuPont must at all times comply with the regulations set forth at 40 C.F.R. Part 82, Subpart F.

D.    Where any compliance obligation required to be met under this Section, requires a federal, state, or local permit or approval, DuPont must submit timely and complete applications and take all other actions necessary to obtain all permits or approvals.  DuPont may seek relief under the provisions of Section "XIII" ("Force Majeure") of this Consent Decree for any delay in the performance of any obligation resulting from a failure to obtain, or a delay in obtaining, any permit required to fulfill any obligation.

E.    Beginning 180 Days after the Effective Date of this Decree, Dupont shall submit a semiannual progress report ("Semiannual Report") to EPA Region 4.   Semiannual Reports must be submitted every 180 Days thereafter until, and including, the reporting period during which DuPont completes all retrofits and replacements pursuant to Appendix A.  Each Semiannual Report shall be due within thirty Days after the end of each semiannual reporting period and each Semiannual Report must contain the following information for the most recent reporting period:

1.  An itemized description of the activities that have been completed and the date the activity was completed for each IPR to comply with the requirements of Appendix A;

2.  An itemized description of the activities that are ongoing for each IPR to comply with the requirements of Appendix A;

3. An estimate of the time period needed by DuPont to complete the remaining activities identified in the timeline to retrofit or replace each IPR pursuant to Appendix A; and

4.  Specifically identify the date that each IPR has been completely retrofitted or replaced, in accordance with Appendix A.

7

F.     Each Semiannual Report and any other document required to be submitted pursuant to the terms of this Consent Decree must contain a certification signed by a responsible corporate officer of DuPont.  The certification must read:

> "I, _____, certify under penalties of law that the information contained in or accompanying this (submission/document) is true, accurate, and complete. As to the identified portion(s) of this (submission/document) for which I cannot personally verify (its/their) truth and accuracy, I certify as the official with supervisory responsibility for the person(s) who, acting under my direct instructions, made the verification, that this is true, accurate, and complete."

G.     DuPont agrees that failure to submit a Semiannual Report as required above shall be deemed a violation of this Consent Decree and DuPont shall be liable for stipulated penalties pursuant to Section X of this Consent Decree.

## VII. SUPPLEMENTAL ENVIRONMENTAL PROJECT

A.     DuPont shall perform a Supplemental Environmental Project ("SEP") under this Consent Decree as specified in the schedule at Appendix "B" of this Consent Decree.

B.     DuPont shall Replace one of its non-violating IPRs with an IPR containing a non-ODS System.   The existing  IPR, known as Machine #3, as described in Appendix B, has never been found to be in violation of any environmental statute or regulation.  However, Machine #3 currently utilizes ODS Refrigerant.

C.     The SEP described in Appendix B is environmentally beneficial in that it will Replace a machine, which has the potential to vent ozone depleting substances into the atmosphere, with a machine that uses only non-ozone depleting refrigerants.

8

D.      No later than thirty-six (36) months  from Date of Entry of this Consent Decree, DuPont shall perform and complete the SEP outlined above and detailed in Appendix B.

E.      DuPont hereby certifies that DuPont is not, and will not be, required to perform the SEP described in Appendix B to this Consent Decree, by any existing or proposed federal, state or local law or regulation; nor is DuPont required to perform or develop the SEP by agreement, grant or as injunctive relief in this or any other case or in compliance with state or local requirements. DuPont further certifies that it has not received, and is not presently negotiating to receive, credit in any other enforcement action for the SEP described in Appendix B.

F.      In implementing the SEP, DuPont shall spend not less than a total amount of $1.2 million.

G.      DuPont shall submit a SEP Completion Report, as defined in Appendix B, containing the following information within sixty (60) Days of final completion of the SEP:

1.      A  description of the SEP as implemented; and

2.      Itemized costs, as provided in Appendix B, and supporting documentation which includes invoices, billings and copies of checks provided to the vendor(s) of equipment; including an itemized list of eligible SEP costs;  and

3.      Certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree and in accordance with each Scope of Work contained in Appendix B.

H.      DuPont agrees that failure to comply with the requirements of this section shall be deemed a violation of this Consent Decree and DuPont shall be liable for stipulated penalties pursuant to Section X of this Consent Decree.

9

I.     DuPont shall submit a SEP Progress Report, ad defined in Appendix B, for the 180 Day period after the Effective Date of the Decree.  The SEP Progress Report shall be due within thirty (30) Days after the end of the 180 Day period and must contain the following information:

     1.     An itemized description of the activities that have been completed and the date the activity was completed in order to comply with the requirements of Appendix B;

     2.     An itemized description of the activities that are ongoing in order to comply with the requirements of Appendix B; and

     3.     An estimate of the time period needed by DuPont to complete the remaining activities identified in the timeline to complete the requirement of this Appendix.

J.     Any public statement, oral or written, in print, film, or media, made by DuPont making reference to the SEP under this Decree shall include the following language:  "This project was undertaken in connection with the settlement of an enforcement action: <u>United States v. E. I. du Pont de Nemours and Company</u>, M.D. Tenn. Civil Action # **3 - 0 5        0 3 4 5**,taken on behalf of the United States Environmental Protection Agency under the Clean Air Act."  This obligation applies to any form of public notice pertaining to the SEP, including any invitation to a media event, or any oral comments or statements made at a media event.

## VIII.   <u>CIVIL PENALTY</u>

A.     DuPont shall pay to the United States a civil penalty in the amount of $250,000 in settlement of the claims alleged in the United States' Complaint.  Payment will be made pursuant to the provisions of Paragraph VIII.(B)  within sixty (60) Days ("the due date") after the Effective Date.

B.     No portion of the civil penalty paid pursuant to this Consent Decree may be used to reduce DuPont's federal or state tax obligations.

C.     The payment to the United States must be by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice Lockbox Bank referencing the civil action number of this case, and DOJ number 90-5-2-1-08054.   Payment must be made in accordance with instructions provided by the United States to DuPont upon entry of the Consent Decree, which will include the name of the receiving bank, the amount to be transferred, the Department of Justice account number, the name of the payee, the U.S. Attorney's claim number (if applicable), and the EPA's facility number.  Any EFTs received after 11:00 a.m. (EST) will be credited on the next business day.  Copies of all documents accompanying the FedWire transfer and a transmittal letter referencing the Department of Justice case number, 90-5-2-1-08054, must simultaneously be mailed to all persons listed in Section XVI. Notices.

D.     Interest on the civil penalty due pursuant to Section VIII. A. above shall begin to accrue on the sixty-first Day after the Effective Date of the Decree, and shall continue to accrue through the date of full and complete payment.  Interest shall accrue at the statutory rate set forth in 28 U.S.C. § 1961.  Interest shall be payable pursuant to Paragraph VIII. C.

## IX.   DEFAULT

A.     If DuPont does not timely pay in full the civil penalty required by Section VIII, DuPont will be liable to the United States for any reasonable attorney's fees, whether suit be brought or not, and all other costs and expenses actually and reasonably incurred by the United States in connection with collecting the civil penalty.

B.     This Consent Decree will be considered an enforceable judgment against DuPont for

11

purposes of post judgment collection under Federal Rule 69, Federal Rules of Civil Procedure, and other applicable statutory authority without further order of this Court.

## X.  STIPULATED PENALTIES

A.    Subject to the Force Majeure and Dispute Resolution provisions of this Consent Decree, DuPont shall pay Stipulated Penalties in the amounts set forth below for each failure to comply with the requirements of this Consent Decree.  "Compliance" includes payment of the civil penalty, together with any accrued interest, and completion of the requirements  under this Consent Decree within the specified time schedules established by and approved under this Consent Decree, as set forth in Sections VI ("Compliance Requirements") and VII ("Supplemental Environmental Projects") and Appendices A and B.

B.    The following Stipulated Penalties will accrue per violation per day for any noncompliance with the provisions of Sections "VI", "VII" and "VIII" of this Consent Decree.

| | |
|---|---|
| 1st through 30th day | $250.00 |
| 31st through 60th day | $500.00 |
| 61st day and beyond | $1,000.00 |

C.    For violations of any other provision of the Decree, Stipulated Penalties will accrue at a rate of $100 per day for the first thirty (30) days, and $250 per day thereafter.

D.    Stipulated Penalties are due and payable when the United States makes a demand for payment.  Stipulated Penalties are payable in accordance with the following Paragraphs.

E.    The United States may, in the unreviewable exercise of its discretion, reduce or waive Stipulated Penalties otherwise due under this Consent Decree.

F.    Notwithstanding the date of any demand for Stipulated Penalties, pursuant to

12

Section X. D., all Stipulated Penalties will begin to accrue on the day after the performance is due or on the day the violation occurs, whichever is applicable. Stipulated Penalties will continue to accrue until performance is completed or until the violation ceases. Nothing herein will prevent the simultaneous accrual of separate penalties for separate violations of this Decree.

      G.      Stipulated Penalties will continue to accrue as provided in accordance with Section X. F. during any Dispute Resolution, with interest, but need not be paid until the following:

          1.      If the dispute is resolved by agreement or by a decision of EPA's that is not appealed to the Court, accrued Stipulated Penalties determined to be due, together with accrued interest, must be paid to the United States within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order;

          2.      If the dispute is appealed to the Court and the United States prevails in whole or in part, DuPont must, within sixty (60) Days after receipt of the Court's decision or order, pay all accrued Stipulated Penalties determined by the Court to be due, together with accrued interest, except as provided in Subparagraph 3, below. However, if DuPont prevails, no such Stipulated Penalties shall be due;

          3.      If the District Court's decision is appealed by any Party, DuPont must, within fifteen (15) Days of receipt of the final appellate court decision, pay all accrued Stipulated Penalties determined to be owing to the United States, together with accrued interest.

      H.      All Stipulated Penalties must be paid within thirty (30) Days after the United States makes a demand for payment. Stipulated Penalties due the United States must, as directed by the United States, be paid by EFT, or by certified or cashier's check in the amount due payable to the "United States Department of Justice," referencing DOJ No. 90-5-2-1-08054 and United

States Attorney's Office file number **8 - 0 5     0 3 4 5**, and delivered to the office of the United

States Attorney, Middle District of Tennessee 110 Ninth Avenue South, Suite A961, Nashville,

Tennessee 37203 .

I.      DuPont must pay interest on any balance of Stipulated Penalties not paid within the

time provided in section X. H.  Interest on Stipulated Penalties will be computed as provided for

in 28 U.S.C. § 1961.   If any Stipulated Penalty is not paid in full when due, the United States is

entitled to recover the costs (including attorneys fees) incurred in any action necessary to collect

any Stipulated Penalty or interest thereon.

J.      In the event DuPont fails substantially to perform the SEP specified in Section VII

herein in a timely manner as provided by this Decree and its appendices,  DuPont shall, in

addition to the stipulated penalties provided in Section X. B. through G. herein, be subject to a

penalty of $2,000,000 which shall become payable within  60 days of EPA's determination that

DuPont has failed substantially to perform the SEP in a timely manner.  The 60 day period shall

begin running on the date EPA sends notice of its determination to DuPont at the address as stated

in Section XVI. Notices.

K.      In the event that DuPont does not expend at least $1.2 million in performing the

SEP, as approved by EPA, and specified in Section VII, then the difference between $1.2 million

and the actual costs expended, shall be paid pursuant to Section VIII. C.

XI.   FORCE MAJEURE

A.      "Force Majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of DuPont, its contractors, or any entity controlled by

DuPont, that delays the performance of any obligation under this Consent Decree despite

14

DuPont's best efforts to fulfill the obligation. "Best efforts" includes using best efforts to anticipate any potential Force Majeure event, and to address the effects of any such event as it is occurring, and after it has occurred, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include DuPont's financial inability to perform any obligation under this Consent Decree.

B.     Examples of events that are *not* Force Majeure include, but are not limited to, unanticipated or increased costs or expenses of work, financial difficulties encountered by DuPont in performing such work, or the failure of DuPont or its representative(s) including contractors to make complete and timely application for any required approval or permit.

C.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, as to which DuPont intends to assert a claim of Force Majeure, DuPont must provide notice in writing, as provided in Section XVI ("Notices") of this Consent Decree, within ten (10) Days of the time DuPont first knew of, or by the exercise of due diligence should have known of, the event. Notification must include an explanation and description of the reasons for the delay; the anticipated duration of the delay; a description of all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and DuPont's rationale for attributing the delay to a Force Majeure event. Failure to comply with these requirements will preclude DuPont from asserting any claim for Force Majeure.

D.     DuPont has the burden of proving, by a preponderance of the evidence, that an event was a Force Majeure event; that DuPont gave the notice required by the preceding Paragraph; that DuPont took all reasonable steps to prevent or minimize any delay caused by the

15

event; and that any period of delay DuPont claims was attributable to the Force Majeure event was caused by that event.

E.      EPA will notify DuPont in writing of its agreement or disagreement with DuPont's claim of a delay or impediment to performance within thirty (30) Days of receipt of the notice provided under Section XI. C.   If EPA agrees that DuPont could not have prevented or mitigated any delay, or anticipated delay, attributable to a Force Majeure event by the exercise of due diligence, EPA will notify DuPont in writing of its agreement to an extension of time for DuPont's performance of the affected compliance requirement by a period not exceeding the delay actually caused by the event.  In the event the Parties cannot agree, EPA's determination will govern unless DuPont invokes formal Dispute Resolution pursuant to Section XII of this Consent Decree within fourteen (14) Days after EPA's notification.  An extension of time for performance of one or more obligations affected by a Force Majeure event will not, of itself, extend the time for performance of any other obligation.

F.      Stipulated Penalties will not be due for the number of days of noncompliance determined to be caused by a Force Majeure event as defined in this Section.

XII.   <u>DISPUTE RESOLUTION</u>

A.      Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedure of this Section is the exclusive mechanism to resolve all disputes arising under this Consent Decree.  The procedures set forth in this Section do not apply to actions by the United States to enforce obligations of DuPont that have not been disputed in accordance with this Section.

B.      Any dispute which arises under or with respect to this Consent Decree will in the

16

first instance be the subject of informal negotiations between the Parties. The period for informal negotiations may not exceed sixty (60) Days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute will be considered to have arisen when one party sends the other party a written Notice of Dispute.

C.    If the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA will be considered binding unless, within fourteen (14) Days after the conclusion of the informal negotiations period, DuPont invokes the formal Dispute Resolution procedures by serving on the United States, in accordance with Section XVI ("Notices") of this Consent Decree a written Statement of Position on the matter in dispute, including, but not limited to, any supporting factual data, analysis, opinion, or documentation.

D.    Within thirty (30) Days after receipt of DuPont's Statement of Position, the United States will serve on DuPont its Statement of Position, including any supporting factual data, analysis, opinion or documentation. Within thirty (30) Days after receipt of the United States' Statement of Position, DuPont may submit a reply.

E.    An administrative record of the dispute must be maintained by EPA and must contain all statements of position, including supporting documentation, submitted pursuant to this Section. This administrative record is the basis upon which the matter in dispute is to be resolved.

F.    The Director of the Air Enforcement Division, OECA ("Director"), or a properly designated representative, will issue a final decision resolving the dispute. Where the dispute pertains to the performance of the Compliance Requirements under Section VI of this Consent Decree, or the performance of the SEP requirements under Section VII of this Consent Decree, the decision will be upon the administrative record maintained by EPA pursuant to Section XII.E.

The decision of the Director will be binding on DuPont, subject only to the right to seek judicial review, in accordance with Section XII.G. below.

G.  The decision issued by EPA under Section XII. F. may be reviewed by this Court upon a motion filed by DuPont and served upon the United States within fourteen (14) Days of receipt of EPA's decision.

H.  In any dispute before the Court, DuPont shall have the burden of proof and the scope of review shall be as set forth in 5 U.S.C. Section 706. DuPont will bear the burden of demonstrating that its position clearly complies with and furthers the objectives of this Consent Decree and the CAA. The Court may grant relief in accordance with applicable principles of law governing review of agency determinations on the administrative record, including but not limited to remanding the dispute for further consideration by the agency or supplementation of the records as appropriate.

I.  The invocation of formal Dispute Resolution procedures under this Section will not extend, postpone or affect in any way any obligation of DuPont under this Consent Decree, not directly in dispute, unless the United States or the Court agrees otherwise. Stipulated Penalties with respect to the disputed matter will continue to accrue from the first day of noncompliance, but payment will be stayed pending resolution of the dispute as provided in Section X.G. In the event that DuPont does not succeed on the disputed issue, Stipulated Penalties will be assessed and paid as provided in Section X ("Stipulated Penalties").

18

## XIII. INFORMATION COLLECTION AND RETENTION

A.  The United States and its representatives, including attorneys, contractors, and consultants, will have the right of entry to the Facility, at all reasonable times, upon presentation of credentials to:

    1.  Monitor the progress of all requirements under this Consent Decree;

    2.  Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    3.  Assess DuPont's compliance with this Consent Decree.

B.  Until the termination of this Consent Decree, DuPont must retain, and must instruct their contractors and agents to preserve, all nonidentical copies of all records and documents (including documents in electronic form) now in their or their contractors' or agents' possession or control, and that relate in any manner to DuPont's performance of its obligations under this Consent Decree. This record retention requirement will apply regardless of any corporate document-retention policy to the contrary.

C.  At the conclusion of the document-retention period provided in the preceding Paragraph, DuPont must notify the United States, at the addresses indicated in Section XVI below, at least ninety (90) Days prior to the destruction of any records or documents subject to the requirements of the preceding Paragraph, and, upon request by the United States, DuPont must deliver any such records or documents to EPA. If EPA does not respond to DuPont's notice within the 90-day period, or if EPA does not request that such documents be delivered to EPA's offices, then DuPont shall be free to dispose of such records at its discretion. DuPont may assert that certain documents, records, or other information is privileged under the attorney-client

19

privilege or any other privilege recognized by federal law. If DuPont asserts such a privilege, it must provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record or information; (4) the name and tile of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege claimed by DuPont. No documents, reports, or other information created or generated pursuant to the requirements of this Consent Decree may be withheld on the grounds that they are privileged.

D.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits.

## XIV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

A.     This Consent Decree resolves the claims of the United States for civil penalties for all violations alleged in the Complaint, and for all violations at DuPont's Facility of the Recycling and Emission Reduction regulations set forth at 40 C.F.R. Sections 82.156 and 82.166, during the five year period prior to the date of lodging of this Consent Decree. Nothing in this Consent Decree is intended to operate in any way to resolve any other civil claims or any criminal liability of DuPont.

B.     Neither this Consent Decree, nor any requirement hereunder, is to be interpreted to be a Permit, or a modification of an existing Permit, issued pursuant to the CAA, 42 U.S.C. § 7401 et seq., nor will it in any way relieve DuPont of its obligation to obtain a Permit and comply with the requirements of any Permit or with any other applicable Federal or State, and local statutes and regulations.

20

C.     This Consent Decree may not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under the CAA, or under other federal or state laws, regulations, or permit conditions, except as expressly specified herein.

D.     DuPont is responsible for achieving and maintaining complete compliance with all applicable federal, state and local laws, regulations, and permits.  DuPont's compliance with this Consent Decree is not a defense to any action commenced pursuant to said laws, regulations, or permits.

E.     This Consent Decree does not limit or affect the rights of DuPont or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against DuPont, except as otherwise provided by law.

F.     This Consent Decree may not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

G.     The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein.

XV.   COSTS

The Parties will each bear their own costs of litigation of this action, including attorneys' fees, except as provided in Sections IX.A. and X.I.

XVI.   NOTICES

A.     Whenever written notifications, submissions, or communications to the United States or to DuPont are required by this Consent Decree, they must be made in writing and addressed as follows:

21

<u>As to The United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Attn: Cheryl L. Smout  DOJ # 90-5-2-1-08054

<u>As to EPA Region 4</u>:

Todd Russo
Air Enforcement Branch
U.S. EPA Region 4
61 Forsyth Street
Atlanta, GA 30303

<u>As to the Defendant</u>:

Guy V. Johnson
Corporate Counsel
E. I. du Pont de Nemours and Company
Legal   D-7090-2
1007 Market Street
Wilmington, DE  19898

B.      A notice submitted pursuant to this Section will be deemed timely if it is correctly addressed and post marked on or before the date the notice is due, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

XVII.   <u>RETENTION OF JURISDICTION</u>

The Court will retain jurisdiction of this case until termination of this Consent Decree, for the purpose of enabling any of the Parties to apply to the Court for such further order, direction, or relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XII ("Dispute Resolution") of this Consent Decree.

22

## XVIII.   MODIFICATION

The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it will be effective only upon approval by the Court.  The terms and schedules contained in Sections VI ("Compliance Requirements") or VII ("Supplemental Environmental Project") of this Consent Decree may be modified upon written agreement of the Parties without Court approval, unless any such modification effects a material change to the terms of this Consent Decree or materially affects DuPont's ability to meet the objectives of this Consent Decree.

## XIX.   TERMINATION

A.     Upon approval by the Court, the Consent Decree will terminate subsequent to a determination by EPA that DuPont has satisfactorily performed all requirements of this Consent Decree.  In the interim, this Court will retain jurisdiction to enforce the Parties' rights and obligations under this Consent Decree.  Nothing contained in this Consent Decree limits the power of the Court to issue such orders or directions as may be necessary to implement, enforce or modify the terms of this Consent Decree or to provide such further relief as the interests of justice may require.

B.     If the Parties agree that DuPont has satisfactorily complied with all requirements of the Consent Decree, and that all other requisite conditions for termination of the Consent Decree have been satisfied, they may file with the Court an appropriate pleading so notifying the Court and requesting termination of the Consent Decree.

23

## XX.   PUBLIC PARTICIPATION

This Consent Decree will be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the public comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper or inadequate.  DuPont consents to the entry of this Consent Decree without further notice.

## XXI.   SIGNATORIES/SERVICE

A.      Each undersigned representative of DuPont and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents.

B.      This Consent Decree may be signed in counterparts, and such counterpart signature pages will be given full force and effect.

C.      DuPont agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified DuPont in writing that it no longer supports entry of the Consent Decree.

D.      DuPont hereby agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements of Rule 4 of the Federal Rules of Civil Procedure ("FRCP") and any applicable Local Rules of this Court including, but not limited to, service of a summons.

24

## XXII.   INTEGRATION

This Consent Decree and the attached Appendices A and B constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersede all prior agreements and understandings, whether oral or written.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor can it be used in construing the terms of this Consent Decree.

## XXIII.   FINAL JUDGMENT

Upon approval and entry of this Consent Decree by the Court, this Consent Decree will constitute a final judgment of the claims settled herein.

IT IS SO ORDERED this _21st_ day of _July_ , 2005.

_____
United States District Judge

FOR THE UNITED STATES OF AMERICA

UNITED STATES DEPARTMENT OF JUSTICE:


4/25/05
DATED:

KELLY A. JOHNSON
Acting Assistant Attorney General
Environment and Natural Resources
   Division


April 15, 2005
DATED:

CHERYL L. SMOUT
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
   Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-5466
(202) 514-2853 (fax)

26

THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

MAR 3 1 2005
_____
DATED:

J. I. PALMER, JR.
Regional Administrator
U.S. Environmental Protection Agency
61 Forsyth Street SW
Atlanta, Georgia 30303

27

FOR E. I. DU PONT DE NEMOURS AND COMPANY:

DATED: 4/18/05

SAM SEVERANCE
Vice President and General Manager
DuPont Titanium Technologies
Chestnut Run Plaza 728/2223
P.O. Box 80728
Wilmington, DE 19880-0728
Phone # (302) 999-5238
Fax # (302) 999-5159

28

## APPENDIX A
### To Consent Decree in the case of
#### United States v. E. I. du Pont de Nemours and Company,
### (M.D. Tenn.)

COMPLIANCE REQUIREMENTS FOR IPRs AT NEW JOHNSONVILLE FACILITY

1.    <u>Introduction</u>

      Pursuant to Section VI of the Consent Decree, DuPont is required to retrofit two IPRs (Industrial Process Refrigeration) known as Fricks # 1 and # 2, and replace an IPR known as FES # 4 at the above referenced facility no later than thirty-six (36) months from the Date of Entry of the Consent Decree. DuPont commits to completing at least one of the retrofits or replacement no later than twelve (12) months from the Date of Entry of the Consent Decree. The purpose for the retrofit of Fricks # 1 and # 2 is to switch from an ODS (Ozone Depleting Substance) known as R-22 to a non-ODS known as R-404a. The purpose of replacing FES # 4 is to replace an ODS system with a non-ODS system by replacing FES # 4, which uses R-22, with a used IPR which uses R-404a. R-404a is listed by EPA as an acceptable substitute for R-22 in industrial process refrigeration systems. DuPont shall comply with the requirements of 40 C.F.R. Part 82 at all times.

      Different refrigerants have different characteristics, therefore, system changes are required in order to retrofit these machines to use R-404a. R-404a operates at a higher pressure, has more volume in the gas phase, and has a larger volumetric load in the liquid phase than R-22. The existing compressors and motors on Fricks # 1 and # 2 will need to be resized to accommodate the different characteristics. The use of R-404a in these machines will require smaller compressors with higher horse power motors and new relief valves will be needed to accommodate the higher operating pressure.

2.    a,    <u>Existing Specifications</u>

| Appliance | Classification | Refrigerant | Charge (Lbs) | Location |
|-----------|----------------|-------------|--------------|----------|
| Frick # 1 | Industrial Process | R-22 | 5,300 | Rxn 1 |
| Frick # 2 | Industrial Process | R-22 | 5,300 | Rxn 1 |
| FES # 4 | Industrial Process | R-22 | 4,500 | Rxn 2 |

   b. <u>Post Project Specifications</u>

| Appliance | Classification | Refrigerant | Charge (Lbs) | Location |
|-----------|----------------|-------------|--------------|----------|
| Frick # 1 | Industrial Process | R-404a | 5,300 | Rxn 1 |
| Frick # 2 | Industrial Process | R-404a | 5,300 | Rxn 1 |
| IPRM # 4 | Industrial Process | R-404a | 5,300 | Rxn 2 |

1

3.    Time Line for Completion

   The time line for completion of retrofitting Fricks # 1 and # 2 from an ODS to a non-ODS is estimated to be no more than thirty-six (36) months from the Date of Entry of this Consent Decree.  However, DuPont shall complete the retrofit of at least one (1) IPR within 12 months of the effective date of this Consent Decree.

   The time line for the replacement of FES # 4 is estimated to be within the same three year period.

   The project time covering the retrofit/replacement of all three (3) IPRs is presented in Attachment # 1 to this Appendix A.

4.    Cost Estimates

   The specifications for the retrofit for Fricks # 1 and # 2, including costs estimates, are included as Attachment # 2 to this Appendix A.

   The specifications for the IPRM # 4 replacement IPR, including costs estimates is included at Attachment # 3 to this Appendix A.

5.    Semi-Annual Progress Reports

   Section VI. Paragraph E. of the Consent Decree requires DuPont to submit semi-annual progress reports to EPA Region 4, beginning 180-days after the Effective Date of the Decree.  Each Semiannual Report shall be due within thirty days after the end of each semiannual reporting period and each Semiannual Report must contain the following information for the most recent reporting period:

   a) An itemized description of the activities that have been completed and the date the activity was completed for each IPR to comply with the requirements of this Appendix A;

   b) An itemized description of the activities that are ongoing for each IPR to comply with the requirements of this Appendix A.

   c) An estimate of the time period needed by DuPont to complete the remaining activities identified in the timeline to Retrofit or Replace each IPR pursuant to this Appendix A; and

   d) Specifically identify the date that each IPR has been completely Retrofitted or Replaced, in accordance with this Appendix A.

2

These reports must be sent to the following address:

Todd Russo (AEEB)
U.S. EPA - Region 4
61 Forsyth Street, S.W.
Atlanta, GA  30303
(404) 562-9194

3

**Appendix A - Attachment 1**

# Appendix A - Attachment 1

## DuPont Johnsonville Plant Project Timing for R-404a Retrofit/Replacement



| Task Name | Duration (work days) | Year 1 | | | | Year 2 | | | | Year 3 | | | | Year 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Qtr 4 | Qtr 1 | Qtr 2 | Qtr 3 | Qtr 4 | Qtr 1 | Qtr 2 | Qtr 3 | Qtr 4 | Qtr 1 | Qtr 2 | Qtr 3 | Qtr 4 | Qtr 1 |
| Retrofit 2 IPRs, Replace 1 IPR, & Install 1 New IPR (SEP) | 741 days | | | | | | | | | | | | | |
| EPA / DOJ Consent Decree Effective | 1 day | | | | | | | | | | | | | |
| Complete Design | 20 days | | | | | | | | | | | | | |
| Estimate Project | 20 days | | | | | | | | | | | | | |
| Authorization of Funds | 30 days | | | | | | | | | | | | | |
| Detail Engineering | 150 days | | | | | | | | | | | | | |
| Procurement | 275 days | | | | | | | | | | | | | |
| Retrofit First IPR | 70 days | | | | | | | | | | | | | |
| Run First Machine on Line | 20 days | | | | | | | | | | | | | |
| Wait for Cooler River Water Temperatures | 115 days | | | | | | | | | | | | | |
| Install New IPR (SEP) | 97 days | | | | | | | | | | | | | |
| Run New Machine on Line | 20 days | | | | | | | | | | | | | |
| Retrofit Second IPR | 70 days | | | | | | | | | | | | | |
| Run Second Machine on Line | 20 days | | | | | | | | | | | | | |
| Wait for Cooler River Water Temperatures | 53 days | | | | | | | | | | | | | |
| Install Replacement IPR | 70 days | | | | | | | | | | | | | |
| Run Third Machine on Line | 20 days | | | | | | | | | | | | | |

This schedule assumes effective date of the consent decree by March 15, 2005. Changes in the actual effective date may have significant effects due to warm weather limitations on equipment installation.

Page  4

1/05/2005

Case 3:05-cv-00345   Document 5   Filed 07/21/05   Page 33 of 38 PageID #: 53

## Estimate for Retrofitting R22 with R404a for each of Fricks 1&2

| | Description | Total | |
|---|---|---|---|
| | | | |
| | New Relief System based on 11033P | $ 103,380 | |
| | Change out R22 for R404a | $ 19,000 | |
| | Non Identified Replacements | $ 9,000 | |
| | | $ - | |
| | | | |
| | Subtotal | $ 131,380 | |
| | | | |
| | | | |
| | QA/Taxes/Contingency | $ 34,478 | |
| | | | |
| | Total | $ 165,858 | |
| | Electrical | | |
| | 500 ft Power Feed | $ 8,555 | |
| | 50 ft Inside Conduit | $ 5,375 | |
| | Power Fuse for each phase (3) | $ 1,350 | |
| | 600 hp motor | $ 36,500 | |
| | | | |
| | | | |
| | Subtotal | $ 51,780 | |
| | | | |
| | | | |
| | QA / Taxes / Contingency | $ 15,094 | |
| | | | |
| | Total | $ 66,874 | |
| Summary | | | |
| | | | |
| | Refrig Machine (4 ea 201 ton) | $ 165,858 | |
| | Instr. & Panel Board Equip | $ 66,874 | |
| | | | |
| | Subtotal | $ 232,732 | |
| | | | |
| | Inflation / Minor Changes | $ 20,946 | |
| | | | |
| | Subtotal | $ 253,678 | |
| | | | |
| | Field Indirect / Engineering | $ 109,293 | |
| | | | |
| | | | |
| | Total (In 2003 dollars) | $ 362,971 | |
| | | | |
| | **Say** 5 | $ 375,000 | |

| Appendix A - Attachment 3 | | |
|---|---|---|
| | | |
| **IPRM #4 Replacement Cost Estimate** | | |
| | | |
| Description | Total | |
| | | |
| | | |
| Modify Used Machine for R-404a | $ 110,380 | |
| Install R404a | $ 19,000 | |
| | $ - | |
| | | |
| Subtotal | $ 129,380 | |
| | | |
| Quality Assurance (4%) | $ 1,835 | |
| Taxes (8%) | $ 6,206 | |
| Contingency (20%) | $ 25,876 | |
| | | |
| Total | $ 163,298 | |
| | | |
| Electrical | | |
| 500 ft Power Feed | $ 8,555 | |
| 50 ft Inside Conduit | $ 5,375 | |
| Power Fuse for each phase (3) | $ 1,350 | |
| 600 hp motor | $ 36,500 | |
| | | |
| | | |
| | | |
| Subtotal | $ 51,780 | |
| | | |
| Quality Assurance | $ 1,440 | |
| Taxes (8%) | $ 3,298 | |
| Contingency (20%) | $ 10,356 | |
| | | |
| Total | $ 66,874 | |
| | | |
| | | |
| | | |
| Refrig Machine | $ 163,298 | |
| Electrical | $ 66,874 | |
| | | |
| Subtotal | $ 230,172 | |
| | | |
| Advancing Wages (4%) | $ 9,207 | |
| Minor Change (5%) | $ 11,509 | |
| | | |
| Subtotal | $ 250,887 | |
| | | |
| Field Indirect (45%) | $ 36,699 | |
| Engineering (20%) | $ 71,897 | |
| | | |
| Total (In 2003 dollars) | $ 359,483 | |
| | | |
| **Say** | **$ 375,000** | |

Case 3:05-cv-00345   Document 5   Filed 07/21/05   Page 35 of 38 PageID #: 55

**APPENDIX B**
To Consent Decree in the case of
<u>United States v. E. I. du Pont de Nemours and Company,</u>
(M.D. Tenn.)

SUPPLEMENTAL ENVIRONMENTAL PROJECT AT NEW JOHNSONVILLE FACILITY

1.    <u>Introduction</u>

      Pursuant to Section VII of the Consent Decree, DuPont is required to replace one of its non-violating IPRs (Industrial Process Refrigeration) with an IPR containing a non-ODS (Ozone Depleting Substance) System no later than thirty-six (36) months from the Date of Entry of this Consent Decree. The IPR, known as Frick # 3, has never been found to be in violation of any environmental statute or regulation, therefore, it is appropriate that its replacement be considered a Supplemental Environmental Project or SEP. Frick # 3 currently utilizes an ODS and the purpose for the replacement of Frick # 3 is to replace an ODS system with a non-ODS system. Frick # 3, which currently uses R-22, will be replaced with a new IPR which uses R-404a. R-404a is listed by EPA as an acceptable substitute for R-22 in industrial process refrigeration systems. DuPont shall comply with the requirements of 40 C.F.R. Part 82 at all times.

2.    a,  <u>Existing Specifications</u>

| Appliance | Classification | Refrigerant | Charge (Lbs) | Location |
|-----------|----------------|-------------|--------------|----------|
| Frick # 3 | Industrial Process | R-22 | 5,300 | Rxn 2 |

    b. <u>Post Project Specifications</u>

| Appliance | Classification | Refrigerant | Charge (Lbs) | Location |
|-----------|----------------|-------------|--------------|----------|
| IPRM # 3 | Industrial Process | R-404a | $\approx 5{,}300$ | Rxn 2 |

3.    <u>Time Line for Completion</u>

      The time line for replacement of Frick # 3 is estimated to be no later than thirty-six (36) months from the Date of Entry of this Consent Decree. The detailed time line showing the sequence of completed milestones for the replacement of Frick # 3 is included in Attachment # 1 to Appendix A.

4.    <u>Specifications and Cost</u>

      In order to replace Frick # 3 with a new IPR that uses R-404a, the replacement IPR will have to be checked, installed, and tested to ensure that it is adequate for DuPont's needs. The specifications for the replacement IPRM # 3, including the cost estimate is included as Attachment # 1 to this Appendix B.

7

5.    SEP Progress Report

Pursuant to Paragraph I of Section VII, of the Consent Decree, DuPont shall submit semi-annual SEP progress reports to EPA Region 4, beginning 180-days after the Effective Date of the Decree. Each Semi-annual Report shall be due within thirty days after the end of each semi-annual reporting period and each Semi-annual Report must contain the following information for the most recent reporting period:

a) An itemized description of the activities that have been completed and the date the activity was completed to comply with the requirements of this Appendix;

b) An itemized description of the activities that are ongoing to comply with the requirements of this Appendix; and

c) An estimate of the time period needed by DuPont to complete the remaining activities identified in the timeline to complete the requirement of this Appendix.

6.    SEP Completion Report

Pursuant to Paragraph G of Section VII, of the Consent Decree, DuPont is required to submit a SEP Completion Report containing the following information within sixty (60) days of final completion of the SEP:

a) A  description of the SEP as implemented;

b) The itemized costs of the activities outlined in the Timeline for Completion, as provided in this Appendix, and supporting documentation which includes invoices, billings, and copies of checks provided to the vendor(s) of equipment; and

c) Certification by a responsible corporate official of DuPont that the SEP has been fully implemented pursuant to the provisions of this Consent Decree.

This report must be sent to the following address:

Todd Russo (AEEB)
U.S. EPA - Region 4
61 Forsyth Street, S.W.
Atlanta, GA  30303
(404) 562-9194

8

# Appendix B - Attachment 1

## 200 Ton - R-404a IPR SEP Project Cost Estimate

Estimate based on previous project costs and 1 200 ton compressor pricing.

No Substation requied

Assums unit will fit in existing building

| Description | Total | |
|---|---|---|
| | | |
| Compressor Building | | |
| Substructure | $ | 18,704 |
| Superstructure | $ | - |
| Lighting & Electric | $ | - |
| Drainage | $ | - |
| Subtotal | $ | 18,704 |
| | | |
| Quality Assurance - Taxes<br>  - Contingency | $ | 4,381 |
| | | |
| Total | $ | 23,085 |
| | | |
| Refrig Machine (201 ton) | $ | 498,000 |
| Labor to install equipment | $ | 16,995 |
| Equipment Foundations | $ | 5,897 |
| Power & Control Wiring | $ | 76,358 |
| Instruments & Panels | $ | 12,610 |
| Instrument Piping | $ | 4,657 |
| Instrument Wiring | $ | 1,799 |
| Piping Brine | $ | 40,000 |
| Piping Releif | $ | 20,000 |
| Insulation Equipment | $ | 29,666 |
| Insulation Piping | $ | 63,839 |
| | | |
| Subtotal | $ | 769,823 |
| | | |
| Quality Assurance - Taxes<br>  - Contingency | $ | 225,637 |
| | | |
| Total | $ | 995,460 |
| | | |
| **Summary** | | |
| | | |
| Refrig Machine | $ | 995,460 |
| Compressor Building, Field Indirect<br>  & Engineering, Advancing Wages,<br>Minor Changes  (at least) | $ | 204,540 |
| | | |
| Total (In 2003 dollars) (at least) | $ | 1,200,000 |

1/05/2005

Case 3:05-cv-00345   Document 5    Filed 07/21/05   Page 38 of 38 PageID #: 58